UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANA JOHNSON,

                              Plaintiff,

        v.

THE STOP & SHOP SUPERMARKET
COMPANY, LLC d/b/a STOP & SHOP,
JEFF RICHARDS, *and* JENNIFER
TAMBURRI,

                              Defendants.

No. 22-CV-9691 (KMK)

OPINION & ORDER

Appearances:

Julie Pechersky, Esq.
Marc S. Oxman, Esq.
Oxman Law Group, PLLC
White Plains, NY
*Counsel for Plaintiff*

Marcy A. Gilroy, Esq.
Littler Mendelson, P.C.
Newark, NJ
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Diana Johnson ("Plaintiff") brings this Action against The Stop & Shop

Supermarket Company, LLC ("Stop & Shop"), Jeff Richards ("Richards"), and Jennifer

Tamburri ("Tamburri"; together with Richards, the "Individual Defendants"; and collectively,

"Defendants"), alleging discrimination on the basis of her gender in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), gender-based hostile work

environment claims pursuant to Title VII and the New York State Human Rights Law

("NYSHRL"), and retaliation claims pursuant to Title VII and the NYSHRL.  (*See generally*

Second Am. Compl. (Dkt. No. 22).)[1]  Plaintiff also brings an NYSHRL aiding and abetting claim

against Tamburri.  (*Id.* ¶¶ 80–82.)  Finally, Plaintiff asserts civil assault and battery claims

against Richards under New York and Connecticut state law.  (*Id.* ¶¶ 83–85.)

 Before the Court are Stop & Shop's Partial Motion To Dismiss the Second Amended

Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and

the Individual Defendants' Partial Motion to Dismiss the SAC pursuant to Federal Rule of Civil

Procedure 12(b)(2) ("Rule 12(b)(2)") and Rule 12(b)(6) (together, the "Motions").  (*See* Stop

& Shop Not. of Mot. (Dkt. No. 25); Ind. Defs. Not. of Mot. (Dkt. No. 41).)  For the reasons that

follow, the Court grants in part and denies in part both Stop & Shop's Motion and the Individual

Defendants' Motion.

<u>I.  Background</u>

<u>A.  Factual Background</u>

 The following facts are drawn from the SAC.  (*See generally* SAC.)  The facts alleged are

assumed true for the purpose of resolving the instant Motions.  *See Div. 1181 Amalgamated*

*Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021)

(per curiam).

<u>1.  Events at the Stop & Shop in Danbury, CT</u>

 On or around March 4, 2021, Plaintiff—a resident of Carmel, New York—began

working as a deli clerk at a Stop & Shop supermarket in Danbury, Connecticut (the "Danbury

Store").  (SAC ¶¶ 7, 15–16.)  As alleged, Stop & Shop is "a limited liability company duly

---

[1] Certain of Defendants' submissions clarify that Tamburri's first name is, in fact, "Jennafer."  (*See, e.g.*, Mem. of Law in Supp. of Ind. Defs. Mot. ("Ind. Defs. Mem.") 1, 8 (Dkt. No. 42).)

Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

authorized to conduct business in and pursuant to the laws of the State of New York and the State of Connecticut." (*Id.* ¶ 10.)

Plaintiff and Richards were often scheduled to work together at the deli counter and, as early as Plaintiff's first week of work at the Danbury Store, he subjected her to "hostile, inappropriate, taunting, menacing and unwelcome conduct of a sexual nature." (*Id.* ¶ 19–20.) For example, Richards would routinely cross his arms, stare at Plaintiff in a menacing manner, and say things like "I just want to make you mad enough to spank or whip me," and "I can spank or whip you." (*Id.* ¶ 21.) Plaintiff immediately reported this behavior to the manager of the Danbury Store, John Radasky ("Radasky"), but he did nothing to remedy the situation. (*Id.* ¶¶ 22–23.)[2]

As the days went by, Richards' conduct toward Plaintiff escalated. (*Id.* ¶ 24.) For instance, when Plaintiff would bend over while performing her job duties, Richards would say things like, "bullseye" and "you're all ass, aren't you[.]" (*Id.*) Plaintiff relayed her concerns and complaints regarding this behavior to Radasky, but he did nothing. (*Id.* ¶ 25.)

By the end of March 2021, Richards' conduct turned physical. (*Id.* ¶ 26.) Specifically, on multiple occasions around that time Richards would approach Plaintiff from behind and press his genitals against Plaintiff's buttocks. (*Id.*) Although Plaintiff reported this conduct to Radasky, he did not address Richards' behavior. (*Id.* ¶¶ 27–28.)[3]

Richards' conduct continued into April 2021. (*See id.* ¶¶ 30–31.) At that time, Richards and another male Stop & Shop employee named "Pierre" would team up and call Plaintiff

---

[2] Radasky is not a Defendant in this Action. (*See generally* SAC.)

[3] Plaintiff avers that "at no time was a formal investigation into Plaintiff's complaints initiated, nor was the matter referred to [Stop & Shop's] human resources department for a corrective response." (SAC ¶ 29.)

3

demeaning "sexual and derogatory names" and make inappropriate gestures toward her.  (*Id.*

¶ 31.)  On one occasion, "Pierre intentionally slammed a steel garbage cart into Plaintiff's hip

and stomach, and then began to throw garbage upon her, including pieces of discarded fish."

(*Id.*)  Meanwhile, Richards looked on and laughed, yelling that Plaintiff was just like "the other

two [] girls that quit[;] she does the same thing that they [did.]"  (*Id.* ¶ 32.)  At around that same

time, in approximately April 2021, Richards physically struck Plaintiff.  (*Id.* ¶ 30.)

   As a result of the way she was treated while working at the Danbury Store, Plaintiff

became physically ill and suffered from severe emotional distress.  (*Id.* ¶ 34.)  After Richards

struck her—and because Radasky had done nothing to address the situation up to that point—

Plaintiff made a report to Tamburri, whom Plaintiff identifies as a "senior manager" at the

Danbury Store.  (*Id.* ¶ 35.)  During a meeting, Tamburri responded to Plaintiff's report by saying,

"the one thing I do know[ is that] you're out of Deli; you can no longer work in my store."  (*Id.*

¶ 36.)[4]

### 2.  Plaintiff's Transfers and Ultimate Separation from Stop & Shop

   Although she asked only to be transferred to a different department within the Danbury

Store, Plaintiff was placed on involuntary paid leave and then—over her objections—transferred

to different Stop & Shop supermarkets, first in Connecticut and then in New York.  (*Id.* ¶¶ 37–

38.)  Plaintiff was transferred involuntarily to a Stop & Shop supermarket in Ridgefield,

Connecticut on or around April 28, 2021.  (*Id.* ¶ 40.)  Then, on or around May 10, 2021, Plaintiff

was transferred involuntarily to a Stop & Shop supermarket in Mount Kisco, New York, where

her hours were greatly reduced.  (*Id.* ¶ 41.)  Finally, on or around June 1, 2021, Plaintiff was

---

[4] Plaintiff alleges that "at no time did Stop & Shop[,] []or its managers, employees, and/or human resources department take corrective action or reprimand" Richards or Pierre. (SAC ¶ 39.)

transferred involuntarily to a Stop & Shop supermarket in Somers, New York, where, yet again, her hours were greatly reduced.  (*Id.* ¶ 42.)

Tamburri transferred to the Stop & Shop supermarket in Somers, New York as well. (*Id.* ¶ 43.)  In addition to working greatly reduced hours at this Stop & Shop location, Plaintiff was also forced to work at a deli sink that had "sewage problems."  (*See id.*)  Plaintiff alleges that her involuntary transfers, overall reduction in hours, and intolerable working conditions in Somers, New York were all in retaliation for her complaints regarding the sexual harassment and other mistreatment she suffered while working at the Danbury Store.  (*Id.* ¶¶ 43, 45.)

As a result of the foregoing, Plaintiff continued to suffer "significant emotional and medical problems[,] as well as economic losses."  (*Id.* ¶ 46.)  So, in a letter delivered to Tamburri and dated July 20, 2022, Plaintiff wrote:  "I, Diana Johnson, quit today due to your continued retaliation / harassment / making up false complaints due to my lawsuit for sexual harassment."[5] (*Id.* ¶ 44.)[6]

### B.  Procedural History

Plaintiff filed her initial Complaint in this Action on November 14, 2022.  (*See* Compl.) On January 20, 2023, Stop and Shop submitted a pre-motion letter, seeking leave to move to dismiss the Complaint in part.  (*See* Letter from Marcy A. Gilroy, Esq. to Court (Jan. 20, 2023) (Dkt. No. 7).)  Plaintiff responded on February 10, 2023.  (*See* Letter from Julie Pechersky, Esq. to Court (Feb. 10, 2023) (Dkt. No. 11).)  In her letter, Plaintiff agreed to amend the Complaint to

---

[5] Given that the initial Complaint in this Action was filed in November 2022, it is unclear to what "lawsuit" Plaintiff was referring in her letter.  (*See* Compl. (Dkt. No. 1).)

[6] Plaintiff notes that she also filed a charge of discrimination against Stop & Shop with the U.S. Equal Employment Opportunity Commission ("EEOC").  (SAC ¶ 4.)  She explains that she received a "notice of right to sue" on or around August 19, 2022, and that she initiated this Action within ninety days thereafter.  (*See id.* ¶¶ 5–6; *see also* Am. Compl. Ex. 1 at 2 (EEOC Notice of Right to Sue) (Dkt. No. 13-1).)

omit a certain cause of action brought under Connecticut state law, (*see id.* at 1), and Plaintiff

filed an Amended Complaint omitting that claim on February 22, 2023, (*see* Am. Compl. (Dkt.

No. 13).)  The Court held a pre-motion conference on February 27, 2023, during which it

adopted a briefing schedule for Stop & Shop's putative partial motion to dismiss.  (*See* Dkt.

(minute entry for Feb. 27, 2023).)  In light of Plaintiff's contemplated additional amended

complaint, among other things, the Parties requested, and the Court granted, two extensions to

that briefing schedule.  (*See* Dkt. Nos. 16–19.)

On April 20, 2023, Plaintiff submitted a letter requesting leave to file the SAC, (*see*

Letter from Julie Pechersky, Esq. to Court (Apr. 20, 2023) (Dkt. No. 20)), which request the

Court granted that same day, (*see* Dkt. No. 21).  On April 21, 2023, Plaintiff filed the SAC.  (*See*

SAC.)  Later that day, the Parties submitted a joint proposed briefing schedule for Stop & Shop's

putative partial motion to dismiss, (*see* Letter from Marcy A. Gilroy, Esq. to Court (Apr. 21,

2023) (Dkt. No. 23)), which the Court adopted on April 24, 2023, (*see* Dkt. No. 24).

Pursuant to the briefing schedule adopted on April 24, 2023, Stop & Shop filed its

Motion on May 5, 2023.  (*See* Stop & Shop Not. of Mot.; Mem. of Law in Supp. of Stop & Shop

Mot. ("Stop & Shop Mem.") (Dkt. No. 26); Decl. of Marcy A. Gilroy, Esq. ("Gilroy Stop &

Shop Decl.") (Dkt. No. 27).)  Following a request for an extension, which the Court granted, (*see*

Dkt. Nos. 29–30), Plaintiff filed her opposition papers on June 20, 2023, (*see* Decl. of Julie

Pechersky, Esq. ("Pechersky Decl.") (Dkt. No. 31); Mem. of Law in Opp'n to Stop & Shop Mot.

("Pl. Stop & Shop Opp'n") (Dkt. No. 32)).  On July 12, 2023, Stop & Shop filed its reply papers.

(*See* Reply Mem. of Law in Supp. of Stop & Shop Mot. ("Stop & Shop Reply") (Dkt. No. 33);

Reply Aff. of Marcy A. Gilroy, Esq. ("Gilroy Stop & Shop Reply Aff.") (Dkt. No. 34).)

After Stop & Shop's Motion was fully submitted, the Individual Defendants filed waivers of service.  (*See* Tamburri Waiver of the Service of Summons (Dkt. No. 35); Richards Waiver of the Service of Summons (Dkt. No. 36).)  On September 29, 2023, the Individual Defendants filed a pre-motion letter seeking leave to move to dismiss the SAC in part.  (Letter from Marcy A. Gilroy, Esq. to Court (Sept. 29, 2023) (Dkt. No. 37).)  In response to a Court Order, (*see* Dkt. No. 38), the Parties submitted a proposed briefing schedule on October 5, 2023, (*see* Letter from Marcy A. Gilroy, Esq. to Court (Oct. 5, 2023) (Dkt. No. 39)), which the Court adopted that same day, (*see* Dkt. No. 40).  Pursuant to that briefing schedule, the Individual Defendants filed their Motion on November 8, 2023.  (*See* Ind. Defs. Not. of Mot.; Ind. Defs. Mem.; Decl. of Jeff Richards ("Richards Decl.") (Dkt. No. 43); Decl. of Marcy A. Gilroy, Esq. ("Gilroy Ind. Defs. Decl.") (Dkt. No. 44).)  Plaintiff filed her opposition on December 26, 2023.  (*See* Mem. of Law in Opp'n to Ind. Defs. Mot. ("Pl. Ind. Defs. Opp'n") (Dkt. No. 46).)  On January 16, 2024, the Individual Defendants filed their reply.  (*See* Reply Mem. of Law in Supp. of Ind. Defs. Mot. ("Ind. Defs. Reply") (Dkt. No. 47).)

## II.  Discussion

### A.  Standards of Review

#### 1.  Rule 12(b)(2)

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court maintains jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023) (same).  However, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co*., 148 F.3d 181, 184 (2d Cir. 1998)

(alteration adopted) (italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (citation and quotation marks omitted)).  "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).  A plaintiff may "make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration, citations, and quotation marks omitted).

Although a court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[,]" a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012))).  "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [a plaintiff's] burden" of establishing personal jurisdiction over a

defendant.  *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's favor" in considering Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

    2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

      "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

    B.  Analysis

      1.  Personal Jurisdiction Over Richards

      The Individual Defendants move to dismiss the SAC in part pursuant to Rule 12(b)(2),

arguing that the Court lacks personal jurisdiction over Richards.  (Ind. Defs. Mem. 21–25).

Although Plaintiff expressly declined to "oppose the motion of Defendant Richards[,]" (Pl. Ind.

Defs. Opp'n 5), "[t]he Court will nevertheless consider whether it has jurisdiction over

[Richards] based on the allegations in the [SAC] and the evidence presented by [Richards,]"

*Bracken v. MH Pillars Inc.*, No. 15-CV-7302, 2016 WL 7496735, at *3 (S.D.N.Y. Dec. 29,

2016) (citing *Moscato v. MDM Grp., Inc.*, No. 05-CV-10313, 2008 WL 2971674, at *1 n.1

(S.D.N.Y. July 31, 2008) (considering an unopposed Rule 12(b)(2) motion on the merits)).

Additionally, the Court acknowledges that it "must first address the preliminary question[] of . . .

personal jurisdiction before considering the legal sufficiency of the allegations in the [SAC]."

*Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 10 (E.D.N.Y. 2016) (quotation marks

omitted); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31

(2007) ("[A] federal court generally may not rule on the merits of a case without first

determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)

and the parties (personal jurisdiction).").

There are three requirements for the Court to exercise personal jurisdiction. *Licci*, 673

F.3d at 59–61. First, "the plaintiff's service of process upon the defendant must have been

procedurally proper." *Id.* at 59. Second, "there must be a statutory basis for personal jurisdiction

that renders such service of process effective." *Id.* Third, "the exercise of personal jurisdiction

must comport with constitutional due process principles." *Id.* at 60. The sufficiency of

Plaintiff's service of process on Richards is not at issue here, as Richards, through counsel,

waived service. (*See* Richards Waiver of the Service of Summons.)

As to the second requirement, the Court considers below the applicability of New York's

long-arm statute—§§ 301–02 of New York's Civil Practice Law and Rules ("N.Y. C.P.L.R.")—

and finds that it provides no basis for personal jurisdiction with respect to Richards. *See Perrone*

*v. Catamount Ski Resort, LLC*, No. 19-CV-8054, 2020 WL 2538464, at *3 (S.D.N.Y. May 19,

2020) ("Personal jurisdiction in New York is established either under [N.Y. C.P.L.R.] § 301,

which allows for 'general' jurisdiction predicated on a continuous or systematic course of doing

business, or [N.Y. C.P.L.R.] § 302, which allows for specific jurisdiction over non-

11

domiciliaries."). Thus, the Court need not, and does not, consider the third requirement, and grants the Rule 12(b)(2) branch of the Individual Defendant's Motion.

### a.  N.Y. C.P.L.R. § 301

Section 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . do[] business in [New York]." *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 508 (S.D.N.Y. 2023) (alterations in original) (quotation marks omitted) (quoting *Delgado-Perez v. City of New York*, No. 17-CV-1194, 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018)); *accord Birittieri v. Whole Foods Mkt. Grp., Inc.*, No. 21-CV-8703, 2023 WL 2266481, at *3 (S.D.N.Y. Feb. 28, 2023) ("Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if she is domiciled in New York, served with process in New York, or continuously and systematically does business in New York.").

With respect to Richards, Plaintiff alleges only that, "[u]pon information and belief, . . . [Richards is] a resident of the State of New York or the State of Connecticut."  (SAC ¶ 13.) Although, "a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction," *Jazini*, 148 F.3d at 184 (citations omitted), the Court "may consider documents beyond the pleadings in determining whether personal jurisdiction exists[.]" *SPV OSUS Ltd.*, 114 F. Supp. 3d at 167 (citation omitted).  And here, Richards has submitted an unrebutted, sworn declaration in which he stated that he is "currently a resident of the State of Connecticut," that he has lived at the same Connecticut residence for at least the past four years or so, and that he has "never resided in the State of New York."  (Richards Decl. ¶¶ 2–3.)  Thus, because the record establishes that Richards is not, in fact, a New York resident, Plaintiff must establish that he "continuously and systematically does business in New York." *Birittieri*, 2023 WL 2266481, at *3.

"For a New York court to exercise general jurisdiction over a nonresident defendant, that defendant must be 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" *Beskrone*, 656 F. Supp. 3d at 508 (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)); *see also TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012) ("Under [N.Y. C.P.L.R.] § 301, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a continuous and systematic course of doing business in New York." (quotation marks omitted)). "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Rosado v. Bondi*, No. 16-CV-6916, 2017 WL 4947122, at *3 (S.D.N.Y. Oct. 27, 2017) (quoting *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007)). In such cases, the individual defendant still "must be 'engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Patel*, 497 F. Supp. 2d at 425 (quoting *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547–48 (S.D.N.Y. 2001)). New York courts have interpreted N.Y. C.P.L.R. § 301 to require that the defendant "be present in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (quotation marks omitted).

Beyond the now-rebutted allegation concerning his residence, the SAC contains no allegations whatsoever regarding Richards' degree of contact with New York. (*See generally* SAC.) In his declaration, Richards states that he does not generally "conduct or transact any business in the State of New York," and that—to his recollection—the only time he has done so recently was when he "stayed overnight at a hotel in upstate New York" in October 2023.

13

(Richards Decl. ¶ 5.)  A one-night stay at a New York hotel is a far cry from the "fair measure of permanence and continuity" required for purposes of N.Y. C.P.L.R. § 301.  *Patel*, 497 F. Supp. 2d at 425 (citation omitted).  Accordingly, on this record, the Court concludes that it has no basis to exercise general jurisdiction over Richards under § 301.

### b.  N.Y. C.P.L.R. § 302

"Specific jurisdiction exists when a forum exercises personal jurisdiction over a defendant in a suit *arising out of or related to the defendant's contacts with the forum*."  *Mirza v. Dolce Vida Med. Spa, LLC*, No. 19-CV-6444, 2024 WL 307969, at *3 (S.D.N.Y. Jan. 26, 2024) (emphasis added) (alteration adopted) (quotation marks omitted).  "N.Y. C.P.L.R. § 302(a) governs specific jurisdiction."  *Id.*  That section of New York's long-arm statute provides:

> *As to a cause of action arising from any of the acts enumerated in this section*, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a) (emphasis added).

To start, N.Y. C.P.L.R. §§ 302(a)(1)–(2) and (4) are plainly inapplicable to Richards in this case.  "To determine the existence of jurisdiction under [§] 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause

of action aris[es] from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d

239, 246 (2d Cir. 2007) (second alteration in original) (quotation marks omitted).  Quite simply,

the SAC contains no allegation whatsoever suggesting that Plaintiff's claims arose out of

Richard's (virtually non-existent) business transactions in—or contracts relating to—New York.

(*See generally* SAC.)  Nor can Plaintiff rely on § 302(a)(2), as she does not allege that Richards

committed a tortious act *in New York*; indeed, she does not allege that any of her interactions

with Richards occurred outside the Danbury Store.  (*See generally* SAC.)  *See also Edwardo v.

Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 468 (S.D.N.Y. 2022) (explaining, with

respect to § 302(a)(2), that "the Second Circuit has held that 'a defendant's [tortious] act or

omission must have occurred within the State' in which a plaintiff seeks the exercise of personal

jurisdiction" (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779,

789–90 (2d Cir. 1999)).  And, with respect to § 302(a)(4), Plaintiff does not allege that Richards

"owns, uses[,] or possesses any real property" in New York, much less that her claims arose out

of any such real property.  (*See generally* SAC; *see also* Richards Decl. § 3 (stating that Richards

never "used, owned, . . . or possessed any property in the State of New York").)  *See A.W.L.I.

Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 574 (E.D.N.Y. 2011) (holding

that the plaintiff failed to establish jurisdiction over the defendant pursuant to § 302(a)(4) as the

plaintiff could not "identify any . . . relevant property or allege any connection between property

in New York State and the claimed injury").

   That leaves § 302(a)(3)(ii), which concerns tortious conduct occurring *outside of* New

York.  *See Birittieri*, 2023 WL 2266481, at *5.[7]  Under § 302(a)(3)(ii), a plaintiff must allege

---

[7] With regard to § 302(a)(3)(i), as noted *supra*, the SAC is devoid of any allegation
suggesting that Richards "regularly does or solicits business, or engages in any other persistent

that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose

from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the

defendant expected or should reasonably have expected the act to have consequences in New

York; and (5) the defendant derived substantial revenue from interstate or international

commerce." *Id.* (citation omitted); *accord PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of

Pharmacy,* 530 F. Supp. 3d 301, 323 (S.D.N.Y. 2021).  Here, Plaintiff makes no allegation that

Richards "derived substantial revenue from interstate or international commerce." *Birittieri*,

2023 WL 2266481, at *5.  (*See generally* SAC.)  For that reason alone, § 302(a)(3)(ii) does not

provide a basis for this Court to exercise specific jurisdiction over Richards.

*          *          *

 In short, Plaintiff has failed to adequate plead facts sufficient to establish that this Court

can exercise personal jurisdiction over Richards, particularly in light of her failure to address,

much less rebut, Richards' Declaration.  Accordingly, the Court grants the Individual

Defendants' Rule 12(b)(2) Motion.  Plaintiff's civil assault and battery claim against Richards is

therefore dismissed.

---

course of conduct, or derives substantial revenue from goods used or consumed or services
rendered, in" New York.

2.  NYSHRL Claims Against Stop & Shop[8]

In the SAC, Plaintiff asserts seven distinct causes of action.  (*See* SAC ¶¶ 48–85.)[9]  First,

she brings three claims pursuant to Title VII: (1) a claim that she was discriminated against on

the basis of her gender, (*see id.* ¶¶ 48–53); (2) a claim that Stop & Shop retaliated against her

after she reported and complained about experiencing a hostile work environment, (*see id.*

¶¶ 54–61); and (3) a claim that she was subjected to a hostile work environment due to her

gender, (*see id.* ¶¶ 62–65).  Plaintiff's Title VII claims are not challenged in the instant Motions.

Next, Plaintiff asserts two similar claims under the NYSHRL—a claim that she was subjected to

a hostile work environment based on her gender, (*see id.* ¶¶ 74–79), and a claim that she was

retaliated against for reporting and complaining about that hostile work environment, (*see id.*

¶¶ 66–73).  Finally, Plaintiff brings an NYSHRL aiding and abetting claim against Tamburri,

---

[8] The allegations in the SAC demonstrate that Plaintiff's NYSHRL retaliation and hostile work environment claims are against Stop & Shop only.  (*See* SAC ¶¶ 66–79 (alleging Plaintiff's NYSHRL retaliation and hostile work environment claims only against "Defendant"); *see also id.* ¶ 10 (defining Stop & Shop as "Defendant" for purposes of the SAC).)

Although her intent is not entirely clear, Plaintiff appears to assert in her opposition to the Individual Defendants' Motion that, apart from the aiding and abetting claim raised against her, Tamburri can be held directly liable for violating the NYSHRL.  (*See* Pl. Ind. Defs. Opp'n 11 (stating that "it is well-settled in the Second Circuit that where a defendant actually participates in the conduct giving rise to a discrimination claim, she can be held personally liable under the statute").)  It is true that "[t]he NYSHRL allows for individual liability . . . where the individual defendant is considered an 'employer[]' of the plaintiff[.]"  *Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, No. 20-CV-3212, 2021 WL 4523770, at *15 (S.D.N.Y. Sept. 30, 2021).  To be considered "[a]n 'employer' under [N.Y. Exec. Law §] 296(1)[, however, an individual defendant must have] 'an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others.'"  *Id.* (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012)).  Here, the SAC contains no allegations suggesting that Tamburri has an ownership interest in Stop & Shop, and Plaintiff separately fails to allege any facts relating to Tamburri's "power" as a "senior manager."  (*See generally* SAC.)  Thus, even if she meant to, Plaintiff has failed to plead facts sufficient to state her NYSHRL retaliation and hostile work environment claims against Tamburri.

[9] The SAC itself notes that it contains six causes of action, but that is because it labels two claims as the "fifth" cause of action.  (*See* SAC 10–11.)

(*see id.* ¶¶ 80–82), and a civil assault and battery claim under New York and Connecticut state law against Richards, (*see id.* ¶¶ 83–85).[10]

Stop & Shop argues in its Motion that Plaintiff's NYSHRL retaliation and hostile work environment claims against it fail as a matter of law because "Plaintiff's allegations do not have the requisite connection to New York to assert a plausible claim for relief under the NYSHRL[,]" given that most of the conduct at issue took place at the Danbury Store, which is indisputably in Connecticut.  (Stop & Shop Mem. 10.)

For context, to state a claim under the NYSHRL, a plaintiff must allege either that "a discriminatory act was committed in New York or that a New York State resident was discriminated against."  *King v. Aramark Servs., Inc.*, No. 19-CV-77, 2019 WL 3428833, at *14 (W.D.N.Y. July 30, 2019) (quoting *Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 407 (S.D.N.Y. 2002)), *aff'd in rel. part on other grounds*, — F.4th —, 2024 WL 1188985 (2d Cir. Mar. 20, 2024).[11]  However, "[t]he NYSHRL does not cover unlawful acts committed by foreign defendants outside of New York against New York residents."  *Hollington v. CDM Fed. Programs Corp.*, No. 22-CV-4940, 2023 WL 2457057, at *11 (S.D.N.Y. Mar. 10, 2023) (citing *Hardwick v. Auriemma*, 983 N.Y.S.2d 509, 511 (App. Div. 2014)).  Thus, as discussed in more detail below, Plaintiff must demonstrate that Stop & Shop is a "domestic corporation" liable for violating the NYSHRL for its actions in Connecticut, *see* N.Y. Exec. Law § 298-a (making the NYSHRL applicable to certain discriminatory acts committed outside of New York), or that the

---

[10] The Court addresses the aiding and abetting claim against Tamburri below.  *See infra* Section II.B.3.  And as noted above, the claim against Richards is dismissed because the Court lacks personal jurisdiction over him.  *See supra* Section II.B.1.

[11] There is no dispute that Plaintiff is a New York resident.  (*See* SAC ¶ 7 (alleging that Plaintiff is a resident of Carmel, New York).)

challenged conduct here otherwise occurred "within New York" within the meaning of N.Y.

Exec. Law § 297(9), which provides a general private right of action for violations of the

NYSHRL, *see, e.g.*, *Sherwood v. Olin Corp.*, 772 F. Supp. 1418, 1425–26 (S.D.N.Y. 1991)

(setting forth the standard for establishing whether conduct alleged to have violated the

NYSHRL occurred "within New York").

### a.  Applicability of N.Y. Exec. Law § 298-a

Plaintiff relies, in part, on N.Y. Exec. Law § 298-a ("§ 298-a"), as a basis for bringing her

NYSHRL claims.  (*See* Pl. Stop & Shop Opp'n 9–10.)  Specifically, she asserts that Stop &

Shop's "substantial . . . presence" in New York, and the fact that it is "authorized to do business

in [New York,]" brings its actions within the ambit of the NYSHRL.  (*Id.* at 9.)

In pertinent part, § 298-a provides:

> 1. The provisions of [the NYSHRL] shall apply as hereinafter provided to an act
> committed outside this state against a resident of this state or against a corporation
> organized under the laws of this state or authorized to do business in this state, if
> such act would constitute an unlawful discriminatory practice if committed within
> this state.

> 2. If a resident person or domestic corporation violates any provision of [the
> NYSHRL] by virtue of the provisions of this section, [the NYSHRL] shall apply to
> such person or corporation in the same manner and to the same extent as such
> provisions would have applied had such act been committed within this state except
> that the penal provisions of such article shall not be applicable.

> 3. If a non-resident person or foreign corporation violates any provision of this
> article by virtue of the provisions of this section, such person or corporation shall
> be prohibited from transacting any business within this state.

N.Y. Exec. Law § 298-a(1)–(3).  Thus, § 298-a "governs the extraterritorial application of the

NYSHRL" outside of New York.  *King*, 2024 WL 1188985, at *5.  Specifically, by its terms,

§ 298-a(2) "subjects New York residents and domestic corporations who commit an 'unlawful

discriminatory practice' against New York residents outside the state to almost all of the

provisions of the [NYSHRL]."  *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 748 (N.Y. 2010)

(explaining that the "thrust of [§] 298-a is to outlaw certain discriminatory practices committed outside New York State against New York residents and businesses" (original alteration adopted) (quotation marks omitted)).

Here, the SAC alleges only that Stop & Shop "is a limited liability company duly authorized to conduct business in and pursuant to the laws of the State of New York." (SAC ¶ 10.)  In other words, Plaintiff fails to allege that Stop & Shop is a "domestic corporation," or even a "resident," that would be subject to the terms of § 298-a(2).

To get around this fatal defect in her pleadings, Plaintiff argues in her opposition to Stop & Shop's Motion that—notwithstanding the fact that Stop & Shop is a "dual citizen of Delaware and Massachusetts," (Pl. Stop & Shop Opp'n 4)—§ 298-a still operates to enable her to bring NYSHRL claims against Stop & Shop for its conduct in Connecticut given that it is authorized to do business in New York, (*see id.* at 9).  As an initial matter, the Court notes that "allegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, and such allegations do not automatically amend the complaint."  *Ferreira v. N.Y.C. Dep't of Educ.*, No. 22-CV-4993, 2024 WL 308005, at *3 (S.D.N.Y. Jan. 26, 2024) (alteration omitted) (quoting *Lee v. Saul*, No. 19-CV-6553, 2022 WL 873511, at *4 (S.D.N.Y. Mar. 23, 2022)).  Moreover, even if the Court credited this newly raised allegation, Plaintiff points to *no* authority standing for the proposition that § 298-a covers entities authorized to do business in New York, regardless of their actual place of citizenship.[12]  In short, because she has failed to allege that Stop & Shop is a "New York resident or domestic corporation," *Hoffman*, 933 N.E.2d at 748, Plaintiff cannot rely

---

[12] In support of this argument, Plaintiff is perhaps relying on § 298-a(1)'s language regarding corporations "authorized to do business in this state."  N.Y. Exec. Law § 298-a(1). However, as Plaintiff herself admits, that language expressly applies to putative NYSHRL *plaintiffs*, not would-be defendants.  (*See* Pl. Stop & Shop Opp'n 9.)

on § 298-a(2) to bring her NYSHRL claims against Stop & Shop.[13]  *See Wishner v. Cont'l*

*Airlines*, No. 94-CV-8239, 1997 WL 420286, at *7 (S.D.N.Y. July 25, 1997) (declining to apply

§ 298-a(2) to a Delaware corporation with its corporate headquarters in Texas merely because

---

[13] Plaintiff and Stop & Shop attached several documents to their motion papers relating to their § 298-a arguments.  (*See* Gilroy Stop & Shop Decl. Ex. F (Stop & Shop Certificate of Incorporation) (Dkt. No. 27-6); Pechersky Decl. Ex. A (List of 100 Stop & Shop Locations in New York) (Dkt. No. 31-1); Gilroy Stop & Shop Reply Aff. Ex. A (Stop & Shop Operating Agreement) (Dkt. No. 34-1).)  Although Plaintiff and Stop & Shop fail to take into account this basic legal principle, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Rule] 56."  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citation omitted).  Of course, "the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.* (citations omitted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety. . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (quotation marks omitted).  Under the Federal Rules of Evidence, a court may take judicial notice of a fact outside of the pleadings provided that, among other things, the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  In addition, a court may consider a document incorporated by reference in the complaint "where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed."  *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (explaining that "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless integral to the complaint and, accordingly, a fair object of consideration on a motion to dismiss" and that "[a] document is integral to the complaint where the complaint relies heavily upon its terms and effect" (quotation marks omitted)).

Because Plaintiff did not reference or rely upon any of the extrinsic materials that Plaintiff and Stop & Shop have submitted in any way in the SAC, (*see generally* SAC), and because those materials are not judicially noticeable in the context of this case, *see, e.g.*, *Kombert-Rosenblatt v. Hester*, No. 23-CV-1621, 2023 WL 4707032, at *2 (S.D.N.Y. July 24, 2023) (declining to take judicial notice of an operating agreement because, among other reasons, the "existence and content" of the operating agreement was "not generally known within the Southern District of New York" (citing Fed. R. Evid. 201(b))); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 262–63 (S.D.N.Y. 2019) (declining to take judicial notice of information on a "non-government website"), the Court declines to consider them.

the defendant was "authorized to do business in New York"); *see also Harte v. Woods Hole Oceanographic Inst.*, No. 10-CV-3916, 2012 WL 12951525, at *4 n.6 (E.D.N.Y. Jan. 6, 2012) (noting that § 298-a(2) covers only unlawful discrimination committed by a New York resident or domestic corporation), *aff'd*, 495 F. App'x 171 (2d Cir. 2012) (summary order); *Torrico*, 213 F. Supp. 2d at 406 n.10 (noting that, under § 298-a(2), "a New York resident can maintain a civil action for out-of-state discrimination by a *resident* defendant" (emphasis in original)); *Hammell v. Banque Paribas*, 780 F. Supp. 196, 199 (S.D.N.Y. 1991) ("Although . . . § 298-a permits a New York resident to sue a domestic corporation for discriminatory acts committed outside New York, it *does not* provide a private civil cause of action to New York residents discriminated against out of state by a foreign corporation." (emphasis added)).

The Court notes that Plaintiff may be raising an alternative argument that, even assuming Stop & Shop is a non-citizen of New York, § 298-a(3) may still provide her a statutory basis to bring her NYSHRL claims.  (*See* Pl. Stop & Shop Opp'n 7 ("Assuming arguendo that Stop & Shop's residence is not New York for purposes of the NYSHRL, it is nonetheless subject to Plaintiff's [NYSHRL] Claims.").)  However, the caselaw on this issue is crystal clear; "[c]ourts in [the Second] [C]ircuit [consistently] have held that 'the NYSHRL does not provide a cause of action to a New York resident for discriminatory acts committed outside of New York by a foreign corporation.'"  *King*, 2019 WL 3428833, at *16 (collecting cases) (quoting *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 106 (E.D.N.Y. 2005)); *accord Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234, 238 (S.D.N.Y. 1995) ("[T]he NYHRL does not provide a cause of action to a *New York* resident for discriminatory acts committed *outside* of New York by a *foreign* corporation." (emphases in original); *see also King*, 2024 WL 1188985, at *7 ("The Appellate Division, First Department, of the New York State Supreme Court has held on at least

three occasions that § 298-a does not provide a private cause of action to New York residents

discriminated against outside of New York by [non-New York] corporations." (alteration in

original) (quotation marks omitted)); *Harte*, 495 F. App'x at 172 ("Although the New York

Court of Appeals has not ruled on the question, one of the state's intermediate appellate courts

has consistently ruled that the [NYSHRL] 'does not provide a private cause of action to New

York residents discriminated against outside of New York by foreign corporations.'" (quoting

*Sorrentino v. Citicorp*, 755 N.Y.S.2d 78, 78 (App. Div. 2003))).[14]  Thus, Plaintiff cannot

plausibly state her NYSHRL claims pursuant to N.Y. Exec. Law § 298-a(3).[15]

### b.  NYSHRL Retaliation Claim

Turning to Plaintiff's substantive NYSHRL claims, "[t]he NYSHRL . . . makes it

unlawful for an employer to retaliate or discriminate against an employee because [s]he 'has

---

[14] To be clear, § 298-a(3) does provide a "remedy for out-of-state discrimination by a non-resident person or foreign corporation [in the form of] an order by the [New York State Division of Human Rights] directing the non-resident person or foreign corporation to cease and desist from the acts complained of or be prohibited from transacting business within the state[.]" *Sherwood*, 772 F. Supp at 1422–23; *see id.* at 1424 (concluding that "the *only* kind of order contemplated by those who drafted § 298-a(3) is an order issued by the [New York State Division of Human Rights] directing a non-resident defendant to cease and desist from discrimination, or to cease transacting business within the state" (emphasis added)); *accord Wait v. Beck's N. Am., Inc.*, 241 F. Supp. 2d 172, 178–79 (N.D.N.Y. 2003) ("[C]ourts have held that . . . § 298-a(3) only provides an administrative remedy for discriminatory acts committed outside the state by non-resident defendants.") (collecting cases); *see also Taperell v. Tegan Lighting, Inc.*, No. 18-CV-3343, 2019 WL 1118053, at *2 (E.D.N.Y. Mar. 11, 2019) (same).

[15] Although Plaintiff continues to rely on § 298-a in her opposition to the Individual Defendants' Motion, that reliance is misplaced.  (*See* Pl. Ind. Defs. Opp'n 5, 9.)  Specifically, Plaintiff baldly asserts that she can bring claims "against all Defendants" in light of the language of § 298-a(1).  (*See id.* at 5.)  However, the plain language of that provision makes clear that it does not, on its own, authorize a cause of action for out-of-state violations of the NYSHRL; rather, it merely states that the provisions of § 298-a *together* render the NYSHRL applicable to "an act committed outside [of New York] against a resident of [New York] or against a corporation organized under the laws of [New York] or authorized to do business in [New York.]"  *See* N.Y. Exec. Law § 298-a(1).  And as discussed above, nothing in §§ 298-a(2)–(3) covers Plaintiff's NYSHRL retaliation and hostile work environment claims, as alleged.

opposed any practices forbidden under this article or because . . . [s]he has filed a complaint, testified, or assisted in any proceeding under this article.'" *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2022 WL 4485298, at *14 (S.D.N.Y. Sept. 27, 2022) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020)); *accord* N.Y. Exec. Law § 296(7). Retaliation claims brought under the NYSHRL are analyzed under the same framework as retaliation claims brought pursuant to Title VII. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023) (noting that retaliation claims under the NYSHRL are "subject to the same standard" as such claims in the Title VII context). Thus, to state a prima facie case for retaliation, a plaintiff must demonstrate: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 344 (S.D.N.Y. 2017) (citation omitted).

As discussed above, based on her allegations in the SAC, Plaintiff cannot rely on § 298-a to raise this claim on the basis that Stop & Shop is a domestic corporation. *See supra* Section II.B.2.a. Thus, because Stop & Shop is alleged to be a foreign corporate entity, Plaintiff must also allege that the conduct at issue occurred "within New York." *See Sherwood*, 772 F. Supp at 1425 (explaining that the "entire [NYSHRL] . . . applies to any claimed discriminatory practice . . . that occurred within New York," even where the defendant is "a foreign corporation"). "In order to allege discrimination within New York, [a plaintiff] must allege more than her New York residence; she must allege that an unlawful discriminatory practice originated within New York state, that a discriminatory practice affected the terms, conditions, or privileges of [her] employment within New York, *or* that [the defendant] retaliated against her because she

complained about such discriminatory practices." *Id.* at 1425–26 (emphasis added) (second alteration in original) (citations and quotation marks omitted); *see Hollington*, 2023 WL 2457057, at *11–12 (relying on the test set forth in *Sherwood* when assessing a challenge to NYSHRL claims); *Taperell*, 2019 WL 1118053, at *2 (same); *Curto*, 388 F. Supp. 2d at 106 (same).

Stop & Shop argues that Plaintiff cannot meet the requirements of the *Sherwood* test with respect to her NYSHRL retaliation claim because the alleged misconduct in this case occurred exclusively in Connecticut.  (*See* Stop & Shop Mem. 14–16.)  In response, Plaintiff asserts that "Stop & Shop's practices affected the terms, conditions and privileges of Plaintiff's employment because her hours and pay were reduced in New York and she was subjected to poor working conditions in New York."  (Pl. Stop & Shop Opp'n 7.)

To be sure, much of the alleged conduct in the SAC—specifically, Richards and Pierre's alleged verbal and physical mistreatment of Plaintiff—occurred at the Danbury Store in Connecticut.  *See supra* Section I.A.1.  However, within no more than a month-and-a-half of being struck by Richards, physically attacked by Pierre, verbally harassed by them both, and complaining about that conduct to Tamburri to no avail, (*see* SAC ¶¶ 30–32, 35–36 (alleging that these events occurred in or around April 2021)), Plaintiff was allegedly transferred against her will to Stop & Shop supermarkets *in New York* where her work hours were "greatly reduced," (*see id.* ¶¶ 41–42 (alleging that Plaintiff was first transferred to New York on May 10, 2021)).  Significantly, for purposes of Plaintiff's NYSHRL retaliation claim, "an allegation of reduced hours may allow an inference that a plaintiff suffered an adverse [employment] action."  *Brown v. UPS United Parcel Serv., Inc.*, No. 22-CV-762, 2023 WL 3322702, at *7 (N.D.N.Y. Mar. 28, 2023), *report and recommendation adopted sub nom. Brown v. United Parcel Serv. Inc.*, 2023

WL 3032195 (N.D.N.Y. Apr. 21, 2023); *see also Deveaux v. Skechers USA, Inc.*, No. 19-CV-

9734, 2020 WL 1812741, at *4 (S.D.N.Y. Apr. 9, 2020) (concluding that the plaintiff "plausibly

alleged that [the defendant] undertook an adverse employment action against her," where she

alleged that her work hours were cut after she engaged in a protected activity); *cf. Reichman v.

City of New York*, 117 N.Y.S.3d 280, 286 (App. Div. 2020) ("In the context of a case of unlawful

retaliation, an adverse employment action is one which might have dissuaded a reasonable

worker from making or supporting a charge of discrimination." (citation omitted)).  Thus, the

Court concludes that Plaintiff plausibly alleges that a discriminatory practice affected the "terms,

conditions, or privileges" of her employment in New York because, while she was working in

New York, she suffered "greatly reduced hours" soon after she complained about Richards' and

Pierre's actions at the Danbury Store.  (SAC ¶¶ 41–42.)  *See Hollington v. CDM Fed. Programs

Corp.*, No. 20-CV-6151, 2022 WL 959569, at *4 (E.D.N.Y. Mar. 6, 2022) (concluding that the

plaintiff—a New York resident—had stated "a legally cognizable claim under the NYSHRL"

where he alleged that the out-of-state corporate defendant had denied him a job at their office in

New York and that his "employment in New York was also . . . affected by the retaliation and

discrimination he suffered in Texas and Missouri"), *report and recommendation adopted*, 2022

WL 955298 (E.D.N.Y. Mar. 30, 2022); *see also Curto*, 388 F. Supp. 2d at 107 (denying the

defendants' motion to dismiss and concluding that allegations that their "harassing and

discriminatory conduct ha[d] 'made her job in New York more difficult to perform'" were

sufficient to show that the defendants' conduct affected the terms, conditions, or privileges of her

employment (quoting *Wilcox v. PRC of N.Y. L.P.*, No. 95-CV-1292, 1997 WL 141682, at *5

(N.D.N.Y. Mar. 24, 1997))).  More to the point, even if the retaliation involved transferring

Plaintiff, allegedly against her will, from Connecticut, because the "impact" of that allegedly

unlawful act was felt in New York, Plaintiff has stated a claim under the NYSHRL.  *See Hardwick*, 983 N.Y.S.2d at 512 ("[I]t is the place where the impact of the alleged discriminatory conduct is felt that controls whether the Human Rights Laws apply, not where the decision is made."); *see also King*, 2024 WL 1188985, at *5 (same); *Robles v. Cox and Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) ("[I]t is the impact of the adverse action, and not the location where acts leading to the discrimination occur that gives rise to a claim under the NYCHRL.").

Stop & Shop fails to seriously engage with these allegations.  To the extent that it does on reply, it argues that "Plaintiff offers *no* facts to suggest a causal connection between the hours that were available at Stop & Shop's stores in New York and her prior internal complaint against . . . Richards in Connecticut."  (Stop & Shop Reply 13–14 (emphasis in original).)  This argument, however, ignores abundant caselaw providing that "[a] plaintiff may establish causation . . . by showing that discriminatory treatment closely followed the protected activity."  *Crosby v. Stew Leonard's Yonkers LLC*, — F. Supp. 3d —, 2023 WL 6318524, at *12 (S.D.N.Y. Sept. 28, 2023) (citing *Farmer*, 473 F. Supp. 3d at 332–33); *see also Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 447 (S.D.N.Y. 2011) (same); *cf. Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff's burden at th[e] prima facie stage is de minimis." (italics omitted)).  And the passage of less than two months between an alleged complaint and alleged retaliatory conduct is sufficient to yield an inference of a causal connection.  *See Nezaj v. PS450 Bar and Rest.*, No. 22-CV-8494, 2024 WL 815996, at *12 (S.D.N.Y. Feb. 27, 2024) (denying an individual defendant's motion to dismiss as to the plaintiff's NYSHRL retaliation claims where the complaint alleged that that defendant "began reducing her work responsibilities almost immediately after her complaint about [another defendant] and that her termination came only about two months later"); *see also Gorman-Bakos v. Cornell Co-op Extension of*

*Schenectady Cnty.*, 252 F.3d 545, 554–55 (2d Cir. 2001) (five-month gap between protected

activity and retaliatory act sufficiently close to support a causal inference); *Ulrich v. Soft Drink,*

*Brewery Workers & Delivery Emps.*, 425 F. Supp. 3d 234, 241 (S.D.N.Y. 2019) (slightly over

two-month gap between protected activity and adverse employment action sufficient to give rise

to causal connection between the two); *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d

379, 393 (S.D.N.Y. 2019) (approximately two-month gap between protected activity and

retaliatory act supported inference of causal connection).

    Accordingly, the Court denies Stop & Shop's Motion insofar as it seeks dismissal of

Plaintiff's NYSHRL retaliation claim.

<u>c.  NYSHRL Hostile Work Environment Claim</u>

    Historically, a hostile work environment claim under the NYSHRL required "a showing

[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment,' and [2] that a specific basis

exists for imputing the objectionable conduct to the employer."  *Alfano v. Costello*, 294 F.3d

365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

However, "the NYSHRL was amended on October 11, 2019 to eliminate the 'severe or

pervasive' requirement in favor of a more lenient standard of liability."  *Mayorga v. Greenberg*,

No. 22-CV-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023); *see McHenry v. Fox News*

*Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (explaining that "the NYSHRL was

amended to direct courts to construe the NYSHRL . . . 'liberally for the accomplishment of the

remedial purposes thereof, regardless of whether federal civil rights laws including those laws

with provisions worded comparably to the provisions of [the NYSHRL] have been so

construed'" (alteration in original) (quoting N.Y. Exec. Law § 300)).  Now, plaintiffs "need to

show only that they were "subjected to inferior terms, conditions, or privileges of employment

*because of [their] membership in one or more protected categories*."  *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at \*13 (S.D.N.Y. Sept. 14, 2021) (emphasis added); *accord Mayorga*, 2023 WL 6307994, at \*8.  "It is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . *only when it occurs because of an employee's protected characteristic*,' such as race or gender."  *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at \*11 (S.D.N.Y. Dec. 17, 2013) (emphasis added) (alterations omitted) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) *accord Kirkland-Hudson*, 665 F. Supp. 3d at 465.

As with Plaintiff's NYSHRL retaliation claim, given that the events at issue primarily took place at the Danbury Store in Connecticut, Plaintiff must plausibly allege that the discriminatory conduct at issue nevertheless occurred within New York within the meaning of N.Y. Exec. Law § 297(9).  *See Sherwood*, 772 F. Supp at 1425–26 (explaining that a plaintiff seeking to establish that discriminatory conduct occurred "within New York" must show that: (1) "an unlawful discriminatory practice originated within New York"; (2) "a discriminatory practice affected the terms, conditions, or privileges of [their] employment in New York" or (3) "[the defendant] retaliated against [them] because [they] complained about such discriminatory practices" (quotation marks omitted)); *see also Hollington*, 2023 WL 2457057, at \*11 (noting that the NYSHRL "afford protections . . . [to] plaintiffs who can plead and prove that the alleged discriminatory [or retaliatory] conduct had an impact' within [New York]" (alternations in original) (quotation marks omitted) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017))).

Stop & Shop asserts in its Motion that, as alleged, Plaintiff cannot satisfy the *Sherwood* test because "every single fact upon which Plaintiff relies to establish her hostile work

environment claim occurred in Danbury, Connecticut." (Stop & Shop Mem. 13 (emphases omitted).) Further, Stop & Shop contends that any allegations relating to conduct or actions taken in New York have no "connection to her gender," as they must. (*Id.* at 14.)

Mindful that a hostile work environment claim under the NYSHRL is only actionable to the extent that a plaintiff's mistreatment is due to their membership in a protected group, *see Lloyd*, 2013 WL 6667531, at *11 (citation omitted), the Court notes that most of the conduct alleged in the SAC took place at the Danbury Store. Specifically, Richards' escalating verbal comments and physical acts in March 2021, as well as Richards' and Pierre's conduct in April 2021, all occurred in Connecticut. *See supra* Section I.A.1. Plaintiff alleges that, after she spoke with Tamburri about her treatment, she was transferred against her will to Stop & Shop supermarkets in New York; that she had significantly reduced hours when she worked in New York; and that she faced intolerable working conditions at the Somers, New York Stop & Shop, in that she had to work at a deli sink with "sewage problems." *See supra* Section I.A.2. However, Plaintiff raises no allegation from which the Court can infer that anything that took place in New York qualified as mistreatment *because of* her gender (as opposed to qualifying as retaliation). *See Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (explaining that, to state a hostile work environment claim under the NYSHRL, the plaintiff must be "subjected to inferior terms, conditions or privileges of employment because of [their] membership in one or more . . . protected categories" (quotation marks omitted)). Thus, Plaintiff has not adequately alleged facts sufficient to meet *Sherwood*'s first prong—that the discrimination she complained of "originated within New York." *Sherwood*, 772 F. Supp. at 1426.

Nor has Plaintiff alleged facts sufficient to establish the second prong set forth in

*Sherwood*—that the asserted "discriminatory practice affected the terms, conditions, or privileges

of [her] employment within New York." *Id.* (alteration in original) (citation and quotation marks

omitted).  The only facts plausibly alleging the hostile work environment Plaintiff faced on

account of her gender relate to conduct at the Danbury Store in Connecticut.  *See supra* Section

I.A.1.  Yet, the focus of the inquiry regarding where alleged discrimination takes place is "the

place where the impact of th[at] alleged discriminatory conduct is felt."  *King*, 2024 WL

1188985, at *5 (quoting *Hardwick*, 983 N.Y.S.2d at 512).  And here, Plaintiff's allegations make

clear that she felt the impact of the hostile work environment she suffered at the Danbury

Store—i.e., the Connecticut Stop & Shop location at which she worked while she happened to

live in New York.  That, however, is insufficient to sustain her hostile work environment claim.

*See Harte*, 2012 WL 12951525, at *5 ("[T]here exists no support for the notion that a plaintiff

may bring a discrimination claim under the NYSHRL based upon a foreign corporation's

conduct outside of New York affecting the terms of the plaintiff's employment outside of New

York, but whose effects waft into New York because the plaintiff happens to live there."); *see*

*also King*, 2024 WL 1188985, at *6 (holding that the district court properly dismissed the

plaintiff's NYSHRL claims where she oversaw the defendant-company's operations at several

facilities located in Virginia and West Virginia; she was authorized to work remotely from time

to time from her home in New York; and "the lion's share of the discriminatory conduct that

collectively comprise[d the plaintiff's] hostile work environment claim, and her discriminatory

and/or retaliatory termination[,] was directed at her in Virginia, not New York" (emphasis

omitted)).

Turning to the final *Sherwood* prong, as discussed above in connection with her NYSHRL retaliation claim, Plaintiff has plausibly alleged that Stop & Shop "retaliated against her because she complained about" her alleged mistreatment at the Danbury Store, and that it did so in New York, where she worked at Stop & Shop supermarkets with greatly reduced hours. (*See* SAC ¶¶ 41–42.) *See also supra* Section II.B.2.b.  However, Plaintiff fails to point to a single case standing for the proposition that *retaliation* experienced in New York relating to purely out-of-state *harassment* permits her to bring a hostile work environment claim in New York, and the Court can identify none.  In other words, insofar as Plaintiff suffered adverse effects to her employment in New York, those effects stemmed from the decision to transfer her to New York-based Stop & Shops against her will and reduce her work hours, *not* from the alleged (Connecticut-based) conduct underlying her hostile work environment claim.  Plaintiff therefore cannot rely upon the third prong set forth in *Sherwood*—that a plaintiff's allegations that a defendant "retaliated against her because she complained about [] discriminatory practices" that originated in New York or "affected the terms, conditions, or privileges of her employment within New York" satisfies the NYSHRL's independent requirement that the alleged discrimination occurred "within New York"—to sustain her NYSHRL hostile work environment claim.  *Sherwood*, 772 F. Supp. at 1426.

In sum, the Court grants Stop & Shop's Motion to the extent it seeks to dismiss Plaintiff's NYSHRL hostile work environment claim.

### 3.  NYSHRL Aiding and Abetting Claim

Finally, the Individual Defendants argue that Plaintiff failed to plead sufficient facts to state an NYSHRL aiding and abetting claim against Tamburri.  (Ind. Defs. Mem. 18–21.)  Under the NYSHRL's aiding-and-abetting provision, it is an unlawful discriminatory practice "for any

person to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so."  N.Y. Exec. Law § 296(6).  "An individual may be liable for aiding and abetting unlawful discriminatory acts if the individual '*actually participates* in the conduct giving rise to a discrimination claim,' even though that individual lacked the authority to hire or fire the plaintiff."  *Santana*, 2021 WL 4523770, at *15 (emphasis added) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)); *see also Warren v. Ultimate Fitness Grp., LLC*, No. 19-CV-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) (explaining that, to state an aiding and abetting claim under the NYSHRL, "a [p]laintiff must demonstrate that the non-employer had '*direct, purposeful participation*' in the primary violation of the NYSHRL" (emphasis added) (citing *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020))).  In other words, an alleged "aider and abettor must 'share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.'"  *Warren*, 2021 WL 4239246, at *5 (quoting *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)); *accord Mondelo*, 2022 WL 524551, at *13 ("[A]iding and abetting liability [under the NYSHRL] does not attach to a supervisor unless the facts alleged demonstrate that the aider and abettor shared the intent or purpose of the principal actor.").

With respect to Tamburri, the SAC alleges that—in light of Radasky's repeated failure to address Richards' behavior and actions towards her—Plaintiff ultimately reported Richards (and presumably Pierre) to Tamburri, who was "a senior manager" at the Danbury Store.  (*See* SAC ¶ 35.)  Plaintiff further alleges that, after receiving her report, Tamburri told Plaintiff that "the one thing I do know[ is that] you're out of Deli; you can no longer work in my store," and that, thereafter, Plaintiff was "placed on involuntary paid leave[,] and subjected to a series of transfers

to Connecticut and New York Stop & Shop stores" to which she objected.  (*Id.* ¶¶ 36–37.)

Additionally, Plaintiff asserts that Tamburri, who had also moved to the Somers, New York Stop

& Shop, along with Stop & Shop "did not properly handle the egregious harassment and assault

inflicted upon [her]" and "caused [her] working conditions to worsen."  (*Id.* ¶¶ 43–44.)  Finally,

Plaintiff alleges that she submitted her resignation letter to Tamburri, which explained that she

was "quit[ting] . . . due to *your* continued retaliation / harassment / making up false complaints

due to my lawsuit for sexual harassment."  (*Id.* ¶ 44 (emphasis added).)

Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's

favor, the Court concludes that the SAC alleges a plausible NYSHRL aiding and abetting claim

against Tamburri.  Specifically, Plaintiff's allegation that—in response to her decision to report

the alleged harassment she experienced at the Danbury Store—Tamburri told her that she was

"out of Deli" and could "no longer work at [Tamburri's] store" supports the inference that

Tamburri initiated the chain of retaliatory events discussed above, where Plaintiff was

transferred against her will to Stop & Shop supermarkets in New York and made to work

"greatly reduced" hours.  (*See id.* ¶¶ 35–38, 41–42.)  *See also supra* Section II.B.2.b.  This

inference is further supported by Plaintiff's allegation that she submitted her resignation letter to

Tamburri and that she said in that letter that she was quitting "due to your [i.e., Tamburri's]

retaliation . . . ."  (*Id.* ¶ 44.)  In short, Plaintiff has adequately alleged that Tamburri "had 'direct,

purposeful participation' in [a] primary violation of the NYSHRL"—namely, Stop & Shop's

alleged retaliation against her.  *Warren*, 2021 WL 4239246, at *5.  Accordingly, the Court denies

the Individual Defendants' Motion seeking dismissal of Plaintiff's NYSHRL aiding and abetting

claim.  *See, e.g.*, *Brown v. County of Westchester*, No. 22-CV-6146, 2024 WL 21937, at *11

(S.D.N.Y. Jan. 2, 2024) (denying the defendants' motion to dismiss as to the plaintiff's aiding

and abetting claim where the plaintiff had alleged that the relevant defendants had "fail[ed] to take remedial measures against" two other defendants who were alleged to have harassed the plaintiff); *Achee v. Incorporated Village of Valley Stream*, No. 20-CV-5294, 2023 WL 7130717, at *13 (E.D.N.Y. Oct. 30, 2023) (denying summary judgment on NYSHRL aiding and abetting claims where there was a triable issue of fact as to whether the defendant supervisors knew of discriminatory remarks made against the plaintiff yet failed to take action); *Al-Shimary v. State Univ. of N.Y. at Binghamton*, No. 22-CV-1282, 2023 WL 7128861, at *5–6 (N.D.N.Y. Oct. 30, 2023) (denying motion to dismiss aiding and abetting claim where complaint pled that defendant knew of discrimination and "did nothing to help [the p]laintiff in making a complaint about the matter"); *Hicks v. IBM*, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999) (sustaining NYSHRL aiding and abetting claims against certain defendant supervisors where the plaintiff pled that, by failing to take sufficient action in response to discrimination, they had "encouraged, condoned[,] or approved" of the unlawful activity).[16]

### III.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part both Stop & Shop's Motion and the Individual Defendants' Motion.  Specifically, Plaintiff's NYSHRL-based retaliation claim has survived Stop & Shop's Motion and her NYSHRL aiding and abetting claim against Tamburri has survived the Individual Defendants' Motion.  However, the Court

---

[16] To the extent that the Individual Defendants reassert Stop & Shop's argument that Plaintiff's aiding and abetting claim fails to meet the NYSHRL's quasi-jurisdictional "within New York" requirement as construed in *Sherwood*, (*see* Ind. Defs. Mem. 16–18; Ind. Defs. Reply 9–11), the Court rejects that argument for the same reasons set forth above with respect to the NYSHRL retaliation claim against Stop & Shop, *see supra* Section II.B.2.b.

In addition, given that Plaintiff's NYSHRL retaliation claim survives Stop & Shop's Motion, the Court need not consider the Individual Defendants' argument that Plaintiff has failed to state an NYSHRL aiding and abetting claim because he has failed to state an underlying NYSHRL claim.  (*See* Ind. Defs. Mem. 8, 17–18; Ind. Defs. Reply 12–13.)

dismisses the NYSHRL-based hostile work environment claim for failure to state a claim pursuant to Rule 12(b)(6), as well as the civil assault and battery claim against Richards for lack of personal jurisdiction pursuant to Rule 12(b)(2).

Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of her NYSHRL hostile work environment claim and her civil assault and battery claim is without prejudice.  If Plaintiff wishes to file a third amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order.  There will be no extensions.  Plaintiff is further advised that the third amended complaint will completely replace, not supplement, the SAC.  The third amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file a third amended complaint, the dismissed claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate all pending motions.  (*See* Dkt. Nos. 25, 41.)

The Court will hold a telephonic status conference in this case on May 17, 2024, at 10:30 a.m.

SO ORDERED.

Dated:   March 21, 2024
         White Plains, New York

_____
         KENNETH M. KARAS
         United States District Judge